UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION
-------------------------------------------------------------X
In re                                                    Chapter 7
                                                         Case No. 22-40216-EDK

TOP LINE GRANITE DESIGN, INC,

                    Debtor
-------------------------------------------------------------X
STEVEN WEISS, Chapter 7 Trustee,           Adversary Proceeding No. 23-4032

                    Plaintiff

v.

AJ EQUITY GROUP, LLC,

                    Defendant
-------------------------------------------------------------X

## MOTION TO DISMISS

Defendant AJ Equity Group, LLC, by and through its undersigned counsel, moves to dismiss this adversary proceeding pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Chapter 7 Trustee has sued AJ Equity Group, LLC ("AJ") and numerous other Merchant Cash Advance ("MCA") companies in other adversary proceedings relating to this bankruptcy case. In disregard of the plain terms of the debtor's agreement with AJ and the facts of the matter, the Trustee erroneously asserts that the debtor's MCA agreement with AJ was a loan and asserts claims for avoidance of preferential transfers and violation of the Massachusetts usury statute.

The complaint fails to state a claim because it is predicated on the erroneous argument that the MCA agreement is a loan rather than a revenue purchase. As a result, the payments AJ received under the MCA agreement were not preferential transfers but rather the collection of assets that already belonged to AJ. Similarly, the Massachusetts usury statute is inapplicable because the MCA is not a loan. In any event, the MCA agreement's New York choice of law clause bars application of the Massachusetts usury statute.

## **STATEMENT OF FACTS**

The debtor entered into a Standard Merchant Cash Advance Agreement ("Agreement") with AJ dated January 18, 2022. Complaint at Exhibit "A". Under the Agreement, AJ paid a purchase price of $100,000, less contractual fees, to purchase $142,500 of the debtor's future receivables. The Agreement clearly provided that it was not a loan, with Section 15 stating in relevant part as follows:

> Each Merchant and AJ agree that the Purchase price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from AJ to any Merchant. AJ is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in AJ not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. AJ has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to AJ in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement.

Furthermore, Section 1 of the Agreement states in relevant part as follows:

> Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by AJ, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of AJ and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for AJ and that each Merchant will hold Receivables in trust for AJ in its capacity as a fiduciary for AJ.

The purchased receivables were to be collected by daily debits of $2,590.90 to the debtor's bank account as an approximation of no more than 10% of the debtor's revenue, subject to reconciliation. Section 4 of the Agreement contains a mandatory nondiscretionary reconciliation provision. Section 7 of the Agreement provides that there is no defined term for the duration of payment. The Agreement does not grant AJ recourse in the event of the debtor's bankruptcy. Section 40 of the Agreement contains a New York choice of law provision stating as follows:

> Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase price is being paid by AJ in the State of New York, that the Receivables Purchased Amount is being delivered to AJ in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between AJ, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

On March 25, 2022, the debtor filed a petition for relief under the Bankruptcy Code. The bankruptcy case was converted to Chapter 7 on June 29, 2023. This adversary proceeding was filed on December 19, 2023. In the Complaint, the Trustee seeks avoidance of the payments AJ received under the Agreement, claiming they are preferential transfers (Count I) and treble damages, attorney's fees, and costs for alleged violation of G.L. c. 93A (Count II). Defendant now moves to dismiss.

<u>**STANDARD OF REVIEW**</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (*quoting* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 [2007]). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (*citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (*citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 557).

<u>**ARGUMENT**</u>

**POINT I**

**THIS CASE SHOULD BE GOVERNED BY NEW YORK LAW IN ACCORDANCE <u>WITH THE AGREEMENT'S CHOICE OF LAW PROVISION</u>**

Choice of law is relevant in this case for two reasons. First, as discussed in greater detail *infra*, case law holds that where Massachusetts law is inapplicable due to a choice of law provision selecting the laws of another jurisdiction, Massachusetts usury law claims are barred. Second, New York has the most developed body of law in the United States with regard to the analysis of whether an MCA is a sale or a loan, whereas my research has not located a single case in Massachusetts addressing the issue directly.

"Federal courts are divided on whether the federal choice of law rules or the forum state's choice of law rules apply in bankruptcy proceedings." <u>Goldsmith v. Marsh USA, Inc. (In re Glasshouse Techs.)</u>, 604 B.R. 600, 614 n 4 (Bankr. D. Mass., 2019). "The issue does not appear to have been resolved in this circuit." <u>Whittaker v. Whittaker (In re Whittaker)</u>, 564 B.R. 115, 142

(Bankr. D. Mass., 2017). However, the Supreme Court in <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u> also made clear that federal law may not be applied to questions which arise in federal court, but whose determination is a matter of state law. 313 U.S. 487, 496 (1941). As a result, the Bankruptcy Court for the District of Massachusetts has previously employed Massachusetts law to determine whether a New York choice of law provision should be enforced. <u>Goldsmith v. Marsh USA, Inc. (In re Glasshouse Techs.)</u>, *supra*, 604 B.R. at 614.

Where "the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy." <u>Oxford Global Resources, LLC v. Hernandez</u>, 480 Mass. 462, 468 (2018) (internal citations omitted). "In deciding whether the result of a choice of law agreement is contrary to public policy, we conduct the two-tiered analysis set forth in the Restatement (Second) of Conflict of Laws § 187(2) (1971)." The Restatement states in relevant part that:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restat 2d of Conflict of Laws 187.

Here, the New York choice of law provision should be upheld because the result is not contrary to public policy. The provision passes the first part of the Restatement's two part test because, as acknowledged in Section 40 of the Agreement, "this Agreement was made in the State

of New York, … the Purchase price is being paid by AJ in the State of New York," and "the Receivables Purchased Amount is being delivered to AJ in the State of New York". The provision also passes the second part of the Restatement's test because Massachusetts does not have a materially greater interest than New York as to the usury issue in this case. "New York has a strong public policy against interest rates which exceed 25%". In re McCorhill Pub., Inc., 86 B.R. 783, 793 (Bnkr. S.D. N.Y., 1988). "Usury is a question of supervening public policy". Guerin v. New York Life Ins. Co., 271 A.D. 110, 116 (N.Y. App. Div. 1st Dept., 1946). New York's prohibitions on usury extend back to at least 1717. Adar Bays, LLC v. GenSYS ID, Inc., 37 N.Y. 3d 320, 327 (N.Y., 2021). Accordingly, the choice of law provision should be enforced and New York law should be applied.

**POINT II**

**THE MASSACHUSETTS USURY STATUTE IS NOT APPLICABLE BECAUSE THE AGREEMENT IS A SALE OF RECEIVABLES AND IS NOT A LOAN**

MCA agreements entitle the purchaser of a merchant's future receivables to a specified percentage of the receivables until the amount purchased is received in full. MCAs are routinely upheld by courts as transactions for the purchase and sale of receivables and not as loans. MCA transactions have been characterized as follows:

> An MCA is a specialized form of factoring in which a merchant sells its future receivables for a discounted amount paid up front. The advantage to an MCA transaction is that it typically provides merchants ... access to funds much faster than applying for a traditional loan from a lending institution.

LG Funding, LLC v. Branson Getaways, Inc., 2017 NY Slip Op 32387(U) at 4 (N.Y. Sup. Ct., Nassau County, 2017). "Many trial courts have examined similar agreements in the last several years, and have largely determined that most are not loans, but purchases of receivables." Id. MCA

agreements are routinely ruled to encompass legal transactions for the purchase of receivables as opposed to loans. "[A]dvancing funds in exchange for uncertain future receivables has been held exempt from usury laws when there is no recourse against an unsuccessful business because it is viewed as an uncertain bet on the fortune of the business". People v. RD Legal Funding, LLC, 2020 NY Slip Op 31382(U) at 12 (N.Y. Sup. Ct., New York County, 2020).

Many versions of MCA agreements provide for an estimated daily or weekly payment that is intended to approximate the specified percentage of receivables to be delivered to the purchaser. Any such agreement must contain a "reconciliation provision" so that the estimated payments can be reconciled and adjusted so that they equal the percentage of the merchant's receipts specified in the agreement. Reconciliation provisions have been described as follows:

> A reconciliation provision gives the merchant the ability to request an adjustment of the amount being withdrawn from its account based on its sales proceeds. The purpose of the reconciliation provision is to allow the merchant to pay according to its receivables, so that the merchant pays less than the daily amount when its business is not doing well or pays more when its business is doing well.

IBIS Capital Group, LLC v. Fletcher, 2018 NY Slip Op 30829(U) at 5 (Sup. Ct., Rockland County, 2018).

New York General Obligations Law § 5-511(1) states in relevant part that "[a]ll … contracts … whereupon or whereby there shall be reserved or taken … any greater sum, or greater value, for the loan or forbearance of any money … than is prescribed in section 5-501, shall be void". New York General Obligations Law § 5-511(2) states in relevant part that "whenever it shall satisfactorily appear … by proof, that any … contract … has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled." New York Penal Law § 190.42

renders any loan with an interest rate in excess of 25% criminally usurious. If the interest charged on a loan is deemed to be usurious, then the contract is void *ab initio*. Adar Bays, LLC v. GeneSYS ID, Inc., 37 N.Y. 3d 320, 323-324 (N.Y., 2021). "The text, history, and purpose of New York's usury laws demonstrate that, if the borrower establishes the defense of usury in a civil action, the usurious loan transaction is deemed void and unenforceable, resulting in the uncollectability of both principal and interest." Id. at 325-326. "[T]his same result obtains when the 25% interest rate cap set forth in Penal Law § 190.40—incorporated by reference in General Obligations Law § 5-521 (3)—applies to a loan to a corporation and the interest charged on the loan exceeds that cap." Id. at 326.

A transaction is a loan if the principal sum advanced is repayable absolutely. Rubenstein v. Small, 273 A.D. 102, 104 (N.Y. App. Div. 1st Dept., 1947). The elements of a usury claim are (1) that a loan or forbearance of money (2) requiring interest in violation of a usury statute (3) was charged by the holder or payee with the intent to take interest in excess of the legal rate. Blue Wolf Capital Fund II, LP v. American Stevedoring, Inc., 105 A.D. 3d 178, 183 (N.Y. App. Div. 1st Dept., 2013). "In determining whether a transaction is usurious, the law looks not to its form, but its substance, or real character."

The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be. *See* Seidel v. 18 East 17th St. Owners, Inc., 79 N.Y.2d 735, 744 (1992); Abir v. Malky, Inc., 59 A.D. 3d 646, 649 (N.Y. App. Div. 2nd Dept., 2009). To determine whether a transaction constitutes a usurious loan, it "must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it." Id. at 649, *quoting* Ujueta v. Euro-Quest Corp., 29 A.D. 3d 895, 895 (N.Y. App. Div. 2nd Dept., 2006) (internal quotation marks

omitted). The court must examine whether the plaintiff "is absolutely entitled to repayment under all circumstances". <u>K9 Bytes, Inc. v. Arch Capital Funding, LLC</u>, 56 Misc. 3d 807, 816 (N.Y. Sup. Ct., Westchester County, 2017). Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. *See* <u>Rubenstein v. Small</u>, *supra*, 273 A.D. at 104.

In <u>K9 Bytes, Inc. v. Arch Capital Funding, LLC</u>, *supra*, the Supreme Court of New York developed a three-factor test to determine whether an agreement for the sale of future receivables is a sale or a loan. 56 Misc. 3d 807. The three factors are: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy. <u>Id.</u> at 815-818. The Appellate Division of the Supreme Court of New York adopted this analysis in <u>LG Funding, LLC v. United Senior Props. of Olathe, LLC</u>, 181 AD. 3d 664, 666 (N.Y. App. Div. 2nd Dept., 2020), *rearg denied* 2020 NY Slip Op 70384(U) (N.Y. App. Div. 2nd Dept., 2020). The Second Circuit recognized this analysis in applying New York law in <u>Fleetwood Servs., LLC v. Richmond Capital Grp. LLC</u>, 2023 U.S. App. LEXIS 14241 (2nd Cir., 2023).

In applying the three-factor test, the presence of a valid reconciliation provision suggests the transaction is a sale and the absence of one suggests the transaction is a loan, the agreement having a finite term suggests the transaction is a loan and the absence of one suggests the transaction is a sale, and the availability of recourse should the merchant declare bankruptcy suggests the transaction is a loan whereas the absence of recourse should the merchant declare bankruptcy suggests the transaction is a sale. *See* <u>Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.</u>, 69 Misc. 3d 457 (N.Y. Sup. Ct., New York County, 2020); <u>Streamlined Consultants, Inc. v. EBF Holdings LLC</u>, 2022 U.S. Dist. LEXIS 171085 (S.D. N.Y., 2022); <u>Fox Cap. Grp., Inc. v. Superior Caregivers, LLC</u>, 2022 N.Y. Misc. LEXIS 3225 (N.Y. Sup. Ct., Nassau County, 2022);

<u>Tender Loving Care Homes Inc. v. Reliable Fast Cash, LLC</u>, 76 Misc. 3d 314 (N.Y. Sup. Ct., Richmond County, 2022); <u>Cavalry LLC v. EBF Holdings, LLC</u>, 2021 N.Y. Misc. LEXIS 5833 (N.Y. Sup. Ct., Orange County, 2021); <u>Cavalry LLC v. Funding Metrics, LLC</u>, 2021 NY Slip Op 32017(U) (N.Y. Sup. Ct., Orange County, 2021); <u>Advance Servs. Group LLC v. Acadian Props. Austin LLC</u>, 2021 NY Slip Op 50221(U) (N.Y. Sup. Ct., Kings County, 2021); <u>MCA Master Fund (MMF) v. Universal Scrap Motors Inc.</u>, 2021 NY Slip Op 30097(U) (N.Y. Sup. Ct., Nassau County, 2021); <u>Colonial Funding Network, Inc. v. Davincitek Corp.</u>, 2021 NY Slip Op 30026(U) (N.Y. Sup. Ct., New York County, 2021); <u>Quicksilver Capital LLC v. Obioha</u>, 2020 NY Slip Op 31321(U) (N.Y. Sup. Ct., New York County, 2020).

In <u>Principis Capital, LLC v. I Do, Inc.</u>, the Appellate Division of the Supreme Court of New York reversed an order denying summary judgment for a claim for breach of an MCA agreement. 201 A.D. 3d 752 (N.Y. App. Div. 2nd Dept., 2022). In that case, the purchaser agreed to pay $38,429.39 in exchange for authorization to debit a merchant's account a percentage of the merchant's monthly sales revenue until $52,456.12 would be received. <u>Id.</u> at 753. The merchant also agreed that if it would default under the agreement, then the full uncollected purchased amount would become immediately due and payable to the purchaser. <u>Id.</u> The merchant admitted that the purchaser paid the purchase price, that it executed the agreement with the purchaser, and that it paid approximately $10,183.22 to the purchaser, but denied other material allegations of the complaint and asserted various affirmative defenses and counterclaims. <u>Id.</u> The Appellate Division found that the purchaser established that the transaction set forth in the agreement was not a loan. <u>Id.</u> at 754. The Appellate Division observed that the terms of the agreement specifically provided for adjustments to the monthly payments made by the merchant to the purchaser based on changes in the merchant's sales and that concomitantly, as the amount of the monthly sales could change,

the term of the agreement was not finite. Id. The Appellate Division further observed that no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default. Id.

In Kennard Law P.C. v. High Speed Capital LLC, the Appellate Division of the Supreme Court of New York affirmed a ruling that an MCA agreement was not a usurious loan. 199 A.D. 3d 1406 (N.Y. App. Div. 4th Dept., 2021). A review of the documents electronically filed on the New York State Courts Electronic Filing system ("NYSCEF") in the Supreme Court of New York, Erie County, under index number 805626/2020, reveals that under the MCA agreement at issue (NYSCEF Doc. No. 2), a merchant sold $74,950 of its future receivables in exchange for an up front payment of $50,000 and allowed the purchaser to ACH debit 15% of its daily receipts in order to collect the purchased receivables. A review of an addendum to the agreement reveals that the purchaser was to ACH debit an estimated payment of $1,199 every business day as an approximation of 15% of the merchant's receipts and that the addendum contained a reconciliation provision. In that case, Justice Timothy J. Walker signed an order (NYSCEF Doc. No. 19) granting a motion to dismiss the complaint challenging a judgment by confession on the basis that: 1) the plaintiffs' claim of usury is barred by the applicable one year statute of limitations; 2) the plaintiffs failed to plead a cognizable cause of action; 3) the plaintiffs had no recoverable damages; and 4) the plaintiffs' claims were barred by documentary evidence and settled law in New York holding that the parties' underlying agreement was not a usurious loan. The order was unanimously affirmed.

In Champion Auto Sales, LLC v. Pearl Beta Funding, LLC, the Appellate Division of the Supreme Court of New York ruled that the MCA agreement that was the subject of that case was not a usurious transaction. 159 A.D. 3d 507 (N.Y. App. Div. 1st Dept., 2018), *lv denied* 2018 NY

Slip Op 75019 (N.Y., 2018). Justice Erika M. Edwards of the Supreme Court of New York, New York County, granted a motion to dismiss an action to vacate a confession of judgment entered pursuant to the breach of an MCA agreement under which the merchant sold $81,600 of its future receivables for an up front payment of $57,063, with the receivables to be collected by means of daily debits of $680. Champion Auto Sales, LLC v. Pearl Beta Funding, LLC, 2017 N.Y. Misc. LEXIS 5355 (Sup. Ct., New York County, 2017). The Appellate Division unanimously affirmed the Supreme Court's dismissal of the action. Champion Auto Sales, LLC v. Pearl Beta Funding, LLC, *supra*, 159 A.D. 3d at 507.  A review of the documents electronically filed on NYSCEF in the Supreme Court of New York, New York County, under index number 158692/2016, reveals that the MCA agreement at issue (NYSCEF Doc. No. 5) stated at ¶ 1.4 that the daily debits of $680 were intended to represent 5% of the merchant's daily revenue. A further review of the MCA agreement in that case reveals that ¶ 1.4 therein contains a reconciliation provision.

Here, the Agreement passes the governing three-part test developed in K9 Bytes, Inc. v. Arch Capital Funding, LLC, *supra* (56 Misc. 3d 807) and adopted by LG Funding, LLC v. United Senior Props. Of Olathe, LLC, *supra* (181 A.D. 3d 664), to determine whether or not a transaction for the sale of future receivables is a loan. First, the Agreement contains a reconciliation provision. Second, the Agreement does not have a finite term. And third, the Agreement does not provide the purchaser with any recourse should the merchant declare bankruptcy.

The Agreement is complete, clear, and unambiguous on its face and is entitled to enforcement according to the plain meaning of its terms. The language of the Agreement evidences a clear intent by the parties to enter into a transaction for the purchase of receivables and not a loan. The Agreement itself states that the transaction is not intended to be a loan. There is no indication that the debtor believed that the Agreement was a loan or that interest was being paid

thereunder. The conduct of the parties after entering into the Agreement further shows that they intended to enter into a transaction for the purchase of receivables because AJ fully performed under the Agreement by paying for the receivables and the debtor partially performed by delivering AJ part but not all of the receivables. There is no indication that the debtor objected to the terms of the Agreement. In short, there is nothing to rebut the presumption that the Agreement is enforceable.

The Agreement is missing several material terms that typically define a loan of money. There is no promissory note. There is no maturity date. The amount owed never increases with time. There are no scheduled payments or a fixed repayment term. The guarantee is no broader than the obligations under the Agreement, and the guarantor's payment requirements are no greater than that of the debtor's.

The Agreement does not contain any provisions that have been disapproved by various courts. The reconciliation provision is not discretionary. There is no provision authorizing the purchaser of the future receivables to adjust the amount of any payment due in its sole discretion. There is no provision declaring that the merchant's written admission of its inability to pay its debt or its bankruptcy would constitute events of default. There are no provisions providing that in the event the debtor files for bankruptcy or is placed under an involuntary filing, AJ would be entitled to enforce the provisions of the personal guaranty, the debtor would be required to deliver to AJ a confession of judgment, and AJ would be allowed to enter the confession of judgment as a judgment. There is no provision stating that AJ is under no obligation to provide a reconciliation upon the debtor's request. There is no provision limiting the time or frequency in which a reconciliation may be requested. There is no provision charging the debtor a fee to restructure or extend the terms of the agreement. The Agreement does not require the debtor to pledge more than

100% of its receipts to AJ. The Agreement does not contain a provision requiring the debtor to maintain in its bank account more than the amount of the periodic estimated payment to be debited by AJ. There is no provision that places the debtor in automatic default upon signing the Agreement that would guarantee collection of the amount purchased.

The money advanced by AJ was not repayable in the absolute. The debtor's payments under the Agreement were wholly contingent on the performance of its own business. AJ assumed the risk that there would be no receivables and therefore no payment. Attempting to calculate a corresponding interest rate for the transaction would require unwarranted speculation. The express language of the Agreement, the attendant circumstances, and the business relationship between the debtor and AJ establishes that they intended the Agreement to constitute a transaction for the purchase and sale of receivables and not a loan. Since there is no loan, there cannot be any usury, and so the Massachusetts usury statute is inapplicable.

## POINT III

### THE COMPLAINT FAILS TO STATE A CLAIM FOR THE AVOIDANCE OF TRANSFERS BECAUSE THERE WAS NO TRANSFER <u>OF AN INTEREST OF THE DEBTOR IN PROPERTY</u>

11 U.S.C. § 547(b) states in relevant part that "the trustee may … avoid any transfer of an interest of the debtor in property". The Complaint fails to state a claim as to Count I because there was no transfer of an interest of the debtor in property. AJ purchased the debtor's future receivables. The debtor agreed that the receivables were AJ's property and that the debtor was holding the receivables as a fiduciary in constructive trust for AJ. When AJ debited the debtor's bank account, AJ was merely collecting its own property.

**POINT IV**

**THE CLAIM UNDER THE MASSACHUSESTTS USURY STATUTE IS BARRED BY APPLICATION OF THE AGREEMENT'S NEW YORK CHOICE OF LAW PROVISION**

The application of a contractual choice of law provision selecting a body of law other than that of Massachusetts bars claims under c. 93A relating to the contract. <u>Worldwide Commodities v. J. Amicone Co.</u>, 36 Mass. App. Ct. 304, 308 (Mass. App. Ct., 1994). This concept was discussed in detail in <u>NRO Boston LLC v. CapCall LLC</u>, where a c. 93A claim predicated on the argument that an MCA was really a disguised usurious loan was ruled to be barred due to the fact that the parties' agreement contained a New York choice of law provision. In that case, the Supreme Court of New York stated in relevant part as follows:

> The Court begins by addressing the Fourth Cause of Action, which seeks damages under Mass. Gen. Law ch. 93A §§ 2 and 11. This statute provides for a private right of action to those suffering monetary losses from unfair deceptive conduct in commercial dealings, and any unfair trade or practice that occurs primarily and substantially in Massachusetts. Significantly, the Massachusetts statute . . . does not apply when another jurisdiction's laws govern the underlying breach of contract claims. In this case, it is clear from plaintiffs' allegations that Massachusetts law does not govern any of the parties' agreements. As a result, this Court cannot apply Mass. Gen. Law ch. 93A §§ 2 and 11, and must dismiss the Fourth Cause of Action.

2020 NY Slip Op 34510(U) (N.Y. Sup. Ct., Westchester County, 2020) (internal quotation marks and citations omitted).

**CONCLUSION**

For all of the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Dated: Garden City, New York
March 28, 2024

GENE ROSEN'S LAW FIRM
A PROFESSIONAL CORPORATION
Pro Hac Vice Attorneys for Defendant

By: */s/ Gene W. Rosen*
Gene W. Rosen, Esq.
New York Office of Court Administration
Registration No. 4435687
200 Garden City Plaza, Suite 405
Garden City, New York 11530
Tel (212) 529-3600 Ext. 101
Fax (347) 578-8793
Gene@GeneRosen.com